UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEENA SANDERS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF NATIONAL CITY; OFFICER SAKAMOTO; and DOES 1-10,<br><br>Defendants. | Case No.: 20-cv-00085-AJB-BLM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>**(Doc. No. 5)** |

Before the Court is Defendants' motion to dismiss Plaintiff's *Monell* municipality liability claim and her request for punitive damages. (Doc. No. 5 at 6, 8–16.)[1] For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

**I.   BACKGROUND**

Plaintiff Sheena Sanders brings this civil action against Defendants, City of National City ("National City"), and Officer Sakamoto and Does 1-10 (Defendant Officers). (Doc. No. 1 at 2–3.) The following facts are taken from Plaintiff's Complaint.

Between the late evening to early morning hours on or about February 18, 2020, while Plaintiff and her fiancé were retiring to their bedroom, Defendant Officers loudly

---

[1] The page numbers cited herein correspond to the Court's ECF-generated page numbers, which appear at the top of each filed document.

banged at their house door and shouted for them to open it. (*Id.* at 4.) At this time, Plaintiff was unclothed, and Plaintiff's fiancé was unclothed but for his underwear. Plaintiff's fiancé approached their house door to investigate, and when he opened the door, Defendant Officers "pushed past Plaintiff's fiancé and rushed into the residence and toward the bedroom shared by Plaintiff and her fiancé." (*Id.*) The couple did not consent to Defendant Officers' entry into their home. (*Id.*) Defendant Officers did not have a duly executed search or arrest warrant and entered the couple's home "without provocation, reasonable suspicion, probable cause, [or] exigent circumstances." (*Id.*)

As Plaintiff was naked at this time, her fiancé asked the Defendant Officers, who were all males, to allow Plaintiff to put her clothes on. (*Id.*) Notwithstanding Plaintiff's fiancé's request, Defendant Officers "immediately detained and arrested Plaintiff and placed her in handcuffs" while she "was completely naked." (Doc. No. 1 at 5.) In addition, "Plaintiff repeatedly asked for a female officer to be present so that Plaintiff could put on her clothes," but Defendant Officers refused her request and proceeded to take her out of her residence to the police car, in full view of neighbors and other residents of the apartment building. (*Id.*) "While naked and handcuffed and in full view of the public," Plaintiff again requested permission to put on clothing. (*Id.*) Defendant Officers "provided a small blanket" to cover Plaintiff's body, transported her to jail, and charged her with felony domestic violence. (*Id.* at 5–6.) Plaintiff's fiancé did not request Defendant Officers to arrest or bring charges against Plaintiff. (*Id.* at 6.) The San Diego County District Attorney's Office "refused to prosecute Plaintiff and no criminal complaint was ever filed" against her. (*Id.* at 7.)

According to Plaintiff, as a result of Defendant Officers' unjustified arrest and forced public exposure of her body, she "experienced extreme embarrassment, fright, and has suffered other severe physical and emotional injuries" which require continuing medical attention. (Doc. No. 1 at 7.) Additionally, as a result of Defendant Officers' pursuit of an unwarranted felony domestic violence charge against Plaintiff, she "was forced to pay a bail bondsman unnecessary bonding fees to be released from custody." (*Id.*) On January

10, 2020, Plaintiff filed a Complaint, alleging four causes of action: one for unreasonable search and seizure, and three for municipal liability pursuant to 42 U.S.C. § 1983. (*Id.* at 1, 3, 8–11.)

## II.   LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Facial plausibility is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement, but rather, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine the sufficiency of the complaint, the court must assume the truth of all factual allegations therein and construe them in the light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). This tenet, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("labels and conclusions" or "formulaic recitation of the elements of a cause of action" are insufficient). Plausibility demands more than a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement. *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint is subject to dismissal. *Id.* at 679.

## III.   DISCUSSION

Defendants move to dismiss Plaintiff's *Monell* claim against National City and her request for punitive damages. (Doc. No. 5-1 at 6.) First, Defendants assert that Plaintiff's *Monell* claims do not contain sufficient factual allegations to survive the *Twombly/Iqbal* pleading standard. (*Id.* at 12.) Second, Defendants argue that Plaintiff is not entitled to

punitive damages and has not pled facts to sufficient for such damages. (*Id.*) The Court discusses Defendants' arguments in turn.

### A. Municipal Liability - *Monell* Claims

"Section 1983 provides a cause of action against any 'person' who, under color of law, deprives any other person of rights, privileges, or immunities secured by the Constitution or laws of the United States. The term 'person' includes municipalities." *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 983 (9th Cir. 2002) (citing *Monell v. Dep't of Soc. Serv. of N.Y.*, 436 U.S. 658, 694 (1978)). Although a municipality cannot be held liable under a respondeat superior theory, a municipality can be held liable when its policy or custom causes an employee to violate another's constitutional right. *Monell*, 436 U.S. at 690–92.

Pursuant to *Monell*, a local governmental entity may be liable for failing to act to preserve constitutional rights under § 1983 where the plaintiff can establish the following elements: "(1) that [s]he possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton, v. Harris*, 489 U.S. 378, 389–91 (1989)). A plaintiff can establish the second element—policy—in three ways: (1) where a public entity acts "pursuant to an expressly adopted policy," *Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014); (2) where a public entity has a "longstanding practice or custom," *id.* at 1170, which may arise when the public entity "fail[s] to implement procedural safeguards to prevent constitutional violations" or when it fails to adequately train its employees," *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012); or (3) where "the individual who committed the constitutional tort was an official with 'final policy-making authority,'" *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), or such an official "ratified a subordinate's unconstitutional decision or action and the basis for it, *id.* at 1347.

In the past, for a *Monell* claim to survive a motion to dismiss in the Ninth Circuit, a plaintiff need only plead a "bare allegation that government officials' [unconstitutional] conduct conformed to some unidentified" policy or custom." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). Following *Twombly/Iqbal*, however, the Ninth Circuit instructed that the following pleading standard governs future *Monell* claims:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

**1) Ratification**

In support of her second cause of action, a *Monell* claim based on ratification, Plaintiff alleges that "a final policy maker, acting under color of law, who had final policymaking authority concerning the acts" of Defendant Officers "ratified (or will ratify)" their "acts and bases for them." (Doc. No. 1 at 9–10.) She continues that "the final policymaker knew of and specifically approved of (or will approve of)" Defendant Officers' acts. (*Id.* at 10.) Defendants argue that Plaintiff "merely recites the elements for ratification." (Doc. No. 5-1 at 13.) The Court agrees.

A municipality may be liable under § 1983 where an official with final policy-making authority "ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette*, 979 F.2d at 1346–47. Here, Plaintiff makes no mention of who the alleged final policy maker is and how such person "ratified (or will ratify)" Defendant Officers' acts in this case. (Doc. No. 1 at 9.) As such, Plaintiff's allegations are conclusory and devoid of any factual enhancement. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Thus, the Court finds that Plaintiff has not pled "sufficient allegations of underlying facts to give [Defendants'] fair notice" of the factual grounds upon which they rest their

ratification claim such that Defendants can defend themselves effectively. *AE ex rel. Hernandez*, 666 F.3d at 637. Without more, Plaintiff's allegations amount to a formulaic recitation of the elements, and thus, are inadequate to state a *Monell* claim based on ratification. *See id.*; *Iqbal*, 556 U.S. at 678. Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's *Monell* claim based on ratification and **DISMISSES** this claim **WITHOUT PREJUDICE**.

### 2) Failure to Train

In support of her third cause of action, a *Monell* claim based on a failure to train, Plaintiff alleges that "[t]he training policies of Defendant CITY were inadequate to train its officers to handle the usual and recurring situations with which they must deal," and that it "was deliberately indifferent to the obvious consequences of its failure to train its officers adequately." (Doc. No. 1 at 10.) Plaintiff also alleges that "[t]he failure of Defendant CITY to provide adequate training caused the deprivation of Plaintiff's rights" and its "failure to train is so closely relate to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury." (*Id.* at 10–11.) Defendants contend that these allegations are conclusory, deficient, and insufficient to attach liability based on a failure to train. (Doc. No. 5-1 at 13.) The Court agrees.

A municipality may be liable under § 1983 "where the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact." *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006). A plaintiff asserting a *Monell* claim based on a failure to train must identify how the municipality's training was inadequate and that the inadequate training represents municipal policy. *See id.* Here, Plaintiff points to no specific training policy; instead, she makes a vague reference to "training policies" that should have adequately trained Defendant Officers to handle the usual situations recurring in their everyday work. (Doc. No. 1 at 10.) Plaintiff's overly generalized allegations do not suffice. She does not state, for example, how National City failed to train its officers, what topics were not covered in the training, how the training was deficient, whether the policymakers were aware of such deficiency, or how the

inadequate training caused the constitutional violation. Thus, the Court finds that Plaintiff has not pled "sufficient allegations of underlying facts to give [Defendants'] fair notice" of the factual grounds upon which they rest their failure to train claim such that Defendants can defend themselves effectively. *AE ex rel. Hernandez*, 666 F.3d at 637. Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's *Monell* claim based on a failure to train and **DISMISSES** this claim **WITHOUT PREJUDICE**.

### 3) Unconstitutional Custom or Policy

Defendants argue that Plaintiff's allegations of unconstitutional customs or policies in her third cause of action, "are based on unspecified policies of action and inaction." (Doc. No. 5-1 at 13.) Plaintiff contends that she set forth "numerous specific customs, policies, and/or practices" which caused the constitutional violation in this case. (Doc. No. 8 at 5.) A municipality may be liable under § 1983 where a public entity has a "longstanding practice or custom" that caused an employee to violate a citizen's constitutional rights. *Thomas*, 763 F.3d at 1170.

Turning to the four corners of the Complaint, Plaintiff alleged a series of claimed unconstitutional customs and policies, such as permitting unlawful forced entries into and arrests in citizen's homes without a warrant or exigent circumstances, employing, retaining, and inadequately supervising officers known to abuse their authority with respect to unlawful home entries and warrantless arrests, maintaining grossly inadequate procedures for controlling police misconduct, failing to discipline officers for unlawful entries and arrests, refusing to discipline officers for conduct a court has determined unconstitutional, facilitating a "blue code of silence" whereby police officers do not report their colleague's errors, misconduct, or crime, and maintaining a policy of inaction and indifference towards complaints of police misconduct. (Doc. No. 1 at 11–13.) Coupled with Plaintiff's allegations that Defendant Officers forcibly entered her and her fiancé's home without a warrant, exigent circumstances, or consent, and subsequently "were not disciplined, reprimanded, retrained, suspended, or otherwise penalized" for such conduct, (*Id.* at 11), the Court finds that Plaintiff gives Defendants fair notice of the alleged

unconstitutional practices such that they are able to defend themselves effectively. *See AE ex rel. Hernandez*, 666 F.3d at 637. Moreover, assuming the truth of all factual allegations in the Complaint and the reasonable inferences drawn therefrom, the Court finds that they "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

While Defendants assert that a custom or policy may not be predicated on an isolated or sporadic incident, the Court does not find that such is the case here. This is because the circumstances leading to Plaintiff's arrest allow the Court to draw an inference that other National City officers, like the officers at issue here, have not been properly investigated, disciplined, reprimanded, or retrained with respect to unreasonable search and seizures. In fact, Plaintiff alleged that not one, but *several*, National City police officers forcibly entered her home without a warrant, exigent circumstances, or consent. Supreme Court cases "have firmly established the basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). This gives rise to a reasonable inference that each of these officers believed—based on their professional experience and contrary to settled law—that their unlawful course of conduct was acceptable and consistent with policy or custom. Moreover, in factual support of a custom or policy of facilitating a "blue code of silence" among police officers and inaction towards complaints of police misconduct, Plaintiff alleges that despite the Defendant Officers' egregious conduct and there being no request for Plaintiff's arrest or prosecution, no disciplinary action has been taken against them. (Doc. No. 1 at 11.)

As such, the Court finds that Plaintiff's allegations are sufficient to allege a long-standing custom or practice of permitting unlawful home searches and home arrests, facilitating a "blue code of silence" among police officers, which undermines reporting of police misconduct, and failing to properly discipline officers for unlawful home searches and home arrests. Thus, accepting the foregoing factual allegations as true and drawing all reasonable inferences in favor of Plaintiff, as the Court must do at this stage of the lawsuit,

1  the Court concludes that Plaintiff has adequately alleged that National City has a custom
2  or practice, that National City acted with deliberate indifference, and that National City's
3  custom or practice caused the violation of Plaintiff's constitutional rights. *See Oviatt By &*
4  *Through Waugh*, 954 F.2d at 1474.

5  While the Court recognizes that Plaintiff's allegations of custom or policy narrowly
6  survive the motion to dismiss, it also recognizes the difficulty a civil rights plaintiff
7  typically has in obtaining access to information necessary to state a *Monell* claim at the
8  beginning of the case as such information is often uniquely within the possession of the
9  defendant. *See, e.g.*, *Estate of Osuna v. Cty. of Stanislaus*, 392 F. Supp. 3d 1162, 1174
10 (E.D. Cal. 2019) ("The court concludes that the details of the alleged policy or custom,
11 however, is a topic properly left to development through discovery. It is a rare plaintiff who
12 will have access to the precise contours of a policy or custom prior to having engaged in
13 discovery, and requiring a plaintiff to plead its existence in detail is likely to be no more
14 than an exercise in educated guesswork."). Accordingly, the Court **DENIES** Defendants'
15 motion to dismiss Plaintiff's *Monell* claim based on an unconstitutional custom or policy.

16 **B. Punitive Damages**

17 Lastly, Defendants argue that Plaintiff's request for punitive damages should be
18 dismissed because she has not pled facts sufficient for punitive damages. (Doc. No. 5-1 at
19 16.) Plaintiff asserts that "a Rule 12(b)(6) motion to dismiss for failure to state a claim is
20 not a proper vehicle to challenge a plaintiff's prayer for punitive damages[.]" (Doc. No. 8
21 at 8.) The Court agrees.

22 Rule 12(b), by its own terms, concerns only defenses "to a *claim* for relief in any
23 pleading," and subsection (6) pertains only to a defense "for failure to state a *claim* upon
24 which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6) (emphasis added). The plain
25 meaning of Rule 12(b)(6) therefore supports a finding that a motion to dismiss for failure
26 to state a claim countenances only claims for relief. *See Whittlestone, Inc. v. Handi-Craft*
27 *Co.*, 618 F.3d 970, 973 (9th Cir. 2010) ("Our interpretation of the Federal Rules of Civil
28 Procedure begins with the relevant rule's 'plain meaning.'") (quoting *Kootenai Tribe of*

*Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002)). As a prayer for punitive damages constitutes a remedy, and not a claim within the meaning or Rule 12(b)(6), the Court finds dismissal of Plaintiff's prayer for punitive damages is unwarranted at this stage. *See Oppenheimer v. Sw. Airlines Co.*, No. 13-CV-260-IEG BGS, 2013 WL 3149483, at *4 (S.D. Cal. June 17, 2013) (holding the same and collecting cases); *Sturm v. Rasmussen*, No. 18-CV-01689-W-BLM, 2019 WL 626167, at *3 (S.D. Cal. Feb. 14, 2019) (same). Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiff's request for punitive damages.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's *Monell* claim based on ratification and a failure to train and **DISMISSES WITHOUT PREJUDICE** her second and third causes of action. Plaintiff is granted leave to amend her complaint with respect to these claims and must file the amended complaint on or before Friday, November 13, 2020. Failure to do so will result in dismissal with prejudice.

Finally, the Court **DENIES** Defendants' motion to dismiss Plaintiff's *Monell* claim based on custom or policy and **DENIES** Defendants' motion to dismiss Plaintiff's request for punitive damages.

**IT IS SO ORDERED**.

Dated: October 29, 2020

Hon. Anthony J. Battaglia
United States District Judge